IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **Ashley Adams., et al** § | | |
| *Plaintiffs*, § | | |
| § | | |
| § | | |
| v. § | Civil Action No. 3:13-cv-217 | |
| § | | |
| § | | |
| **Brad Livingston, et al** § | | |
| *Defendants*. § | Jury Demanded | |

**TDCJ DEFENDANTS' JOINT REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE**

Defendants Brad Livingston, Rick Thaler, William Stephens, Robert Eason, Dennis Miller and Texas Department of Criminal Justice ("Defendants"), by and through its Attorney, the Attorney General for the State of Texas, submit this reply to Plaintiff's response to Defendants' Motion to Transfer Venue. In support thereof, the Defendant respectfully offer the following:

Plaintiffs utilize subterfuge and misdirection in order to oppose Defendants' motion to transfer venue. Because Tyler is clearly the more convenient venue, Plaintiffs attempt to artificially shift the focus to characterize this case as primarily focusing on UTMB policies. It plainly is not, and this Court should transfer venue to Tyler for reasons stated below.

The Fifth Circuit recently reaffirmed that a motion to transfer venue is to be decided by considering eight different factors:

1. The relative ease of access to sources of proof;
2. the availability of compulsory process to secure the attendance of witnesses;
3. the cost of attendance for willing witnesses;
4. all other practical problems that make trial of a case easy, expeditious and inexpensive;

5. the administrative difficulties flowing from court congestion;

6. the local interest in having localized interests decided at home;

7. the familiarity of the forum with the law that will govern the case; and

8. the avoidance of unnecessary problems of conflict of laws, or application of foreign law.

*In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (*citing In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)).  In *Radmax*, the Fifth Circuit granted a petition for a writ of mandamus to a trial court that had refused to transfer venue where the factors weighed in support of transfer.  *Id.*  Under the guidelines previously cited by Defendants and as reaffirmed in *Radmax*, Defendants contend that transfer to the Tyler Division is warranted here.

**A.     Public Factors:**

**1.     Court congestion does not favor Galveston.**

Plaintiffs point to this Court's lower criminal docket as the reason why venue should remain in this Court. (Plaintiffs' Response at 7)  This Court has on four occasions noted this very fact when considering a motion to transfer venue. *Barnes v. Romeo Papa, LLC*, Slip Copy, 2013 WL 3049236 (S.D.Tex.,2013); *Nunez v. Offshore Marine Contractors, Inc.,* Slip Copy, 2013 WL 1458916 (S.D.Tex.,2013); *Welding Technologies v. James Machine Works, LLC*, Slip Copy, 2013 WL 1123852 (S.D.Tex.,2013); *Masco Operators, Inc. v. Thompson Tractor Co., Inc.*, 2012 WL 3028075 (S.D.Tex.,2012). Each of these cases involved either maritime suits or commercial matters.  In none of the instances where the Court has noted its lesser criminal docket was the Court faced by the vast disparity in the caseload per judge as presented here.  The previous cases where the Court has pointed to its lesser criminal docket, the disparity is caseload per judge was no more than 40%. *Masco Operators, Inc*, 2012 WL 3028075 at *5.  The disparity here is far

greater. The Eastern District of Texas has 64% fewer civil cases per judge.  It should also be noted that by proceeding with this case in Galveston rather than in the Court near where an inmate is housed, a precedent would be set in which all current inmates wishing to file a heat related lawsuit could do so in Galveston by simply naming UTMB as a Defendant.  This would be a disservice to other litigants with business before this court.  Accordingly, this factor weighs in favor of transfer.

**2.     Plaintiffs' arguments regarding local interest are unavailing.**

Plaintiffs respond to the local interest prong by pointing to the fact that UTMB is headquartered in Galveston and all of the UTMB policies at issue in this suit were crafted there.  This argument is unavailing.  Based on Plaintiffs' pleadings in this Court and Plaintiffs' counsels' comments in the media outside of this Court[1], the shift in focus to UTMB rather than TDCJ is surprising.  Both Plaintiffs' complaint and recent public comments all focused on TDCJ and the lack of air conditioning inside some facilities. When Plaintiffs filed this case, no individual UTMB officials were named in the suit, nor were any Eighth Amendment claims asserted against the agency or its employees. (*See* D.E. 1)  Now Plaintiffs present this litigation as though UTMB policies are the most crucial aspect of the case.  This notion is also belied by the fact that Plaintiffs have added as defendants eight unit level security staff members and six different unit level medical providers – a strong indication that this case involves far more than UTMB policies.  Despite Plaintiffs' best attempts, the fact remains that outside of UTMB policies, no factual connection exists between Galveston and the deceased offenders housing

---

[1] http://itemonline.com/local/x250202567/Some-TDCJ-employees-feeling-the-heat-too
http://itemonline.com/local/x31525461/Pigs-not-inmates-get-TDCJ-air-conditioning
http://itemonline.com/local/x1938689806/High-temperatures-put-heat-on-Texas-prisons
http://www.statesman.com/news/news/as-convicts-staff-swelter-prison-system-buys-clima/nZRKr/
http://www.statesman.com/news/news/lawsuits-at-least-13-men-overheated-died-in-un-air/nYK4g/
http://www.houstonchronicle.com/news/houston-texas/houston/article/State-sued-over-heat-related-deaths-in-4599742.php

status, medical care, supervision, or any other aspect of their lives or deaths.  This shift in focus has for more to do with success in this motion to transfer venue than it does to actual litigation of the case.

Moreover, Plaintiffs' other arguments point *strongly* in favor of Tyler as the appropriate forum under the local interest prong.  Plaintiffs have asserted here and in the public that TDCJ staff members and unions support this litigation because the heat inside the facilities is allegedly a danger to employees as well. (See Plaintiffs' Response at 16)  If this is so, there is *far* more local interest in the Tyler area where the case should be decided by those who live and work in the area.  The community that includes the employees who work in the several facilities in the Palestine area would have far more interest in the outcome of the case if, as Plaintiffs have asserted, the conditions are dangerous to employees as well.  The body of people best suited to determine whether temperatures are unconstitutionally inhumane are the people who live in them.  Finally, it must be noted that Plaintiffs have sued 16 different defendants that work and live in the Tyler area.  If this many members of the community in the Tyler Division are acting in an unconstitutional manner, the community will have a strong interest in the matter.

**B.      Private Factors:**

**1.      The ease of access to proof favors Tyler because this case relies heavily on facts and events that occurred on the unit level.**

The Fifth Circuit reaffirmed in *Radmax*, that the inquiry under this prong "is relative ease of access, not absolute ease of access." 720 F.3d at 288.  Under the ease of access to proof inquiry, Plaintiffs again shift the focus of this litigation in a way that serves their argument for this motion, but ignores the realities of this case.  Plaintiffs frame this litigation as a mere Constitutional challenge to (according to Plaintiffs) primarily UTMB policies as well as some TDCJ policies, where little to no relevant information will be needed from the unit level staff

located in Tyler.  In fact, Plaintiffs' list of witnesses includes *not one* single unit level employee. (Plaintiffs' Response at 18)  As noted above, Plaintiffs have added 15 different unit level security officers and medical personnel as defendants.  In reality, this case will have far more to do with the factual circumstances leading to the inmates' deaths which all occurred on the unit level than it will with agency-wide policies, and 16 of the 21 individual defendants in this case work in the Palestine area.

Second, Plaintiffs' suggestion that TDCJ officers working at the units where the inmates' deaths occurred will have little to no relevant knowledge is plainly incorrect.  As will be shown throughout this litigation — and as Plaintiffs' counsel is well aware — TDCJ offers a number of accommodations to inmates during times of high temperatures.  The evidence will show that these accommodations likely included providing ice water to offenders, providing fans to indigent offenders, allowing offenders to wear less clothing, lowering water temperatures, allowing showers upon request, providing cool zones or cooler areas for the offenders to sit, and training officers regarding the dangers of heat related stress.  A key issue in this litigation is sure to be whether and to what extent the affected inmates took advantage or made use of these accommodations, made medical complaints to security or medical staff, received medical advice, and whether they complied with medical and/or security staff instructions prior to their deaths. These are highly specific factual issues that will be resolved by evidence from local unit level security and medical staff as well as local inmates.  Applied here, the security staff and medical professionals listed in Defendants' Motion to Transfer will, contrary to Plaintiffs' suggestion, likely to testify not just about the event of Plaintiffs' deaths, but also the conditions inside the housing area and Plaintiffs' specific activities in the days, weeks and months prior to their deaths

in terms of his activities within the prison and medical care. Plaintiffs' notion that *not one* single unit level employee is an essential witness to this case stretches the bounds of credulity.

Finally, Plaintiffs' list of UTMB administrative officials they plan to depose is unavailing. As noted above, both Plaintiffs' filings with this Court and its emphasis in the media outside of this Court has been directed at TDCJ and lack of air conditioning in some of its facilities. Indeed, the thrust of Plaintiffs' claims against UTMB is that it failed to create policies regarding protections from heat stress. It appears Plaintiffs selected several different UTMB high ranking officials and stated their intent to depose them based on policies that they claim don't exist. This shift in focus has for more to do with success in this motion to transfer venue than it does to the actual litigation of the case.

**2.    Defendants would be prejudiced by their inability to subpoena local witnesses if this case remains in Galveston.**

Plaintiffs' arguments regarding unavailability of compulsory process are also unavailing. Plaintiffs' potential witnesses outside the Court's subpoena power include numerous high ranking UTMB administrative officials based in Galveston who Plaintiffs believe will all be needed to testify about UTMB policy formation.[2] It is highly doubtful that all, if any, would be needed to testify on this subject.

Meanwhile, were the Court to retain the case in Galveston, Defendants would be prejudiced by their inability to subpoena important unit level fact witnesses such as *any* of the non-defendant medical professionals who actually treated the Plaintiffs both before and on the days of their deaths, any TDCJ employees who no longer work for the agency and are reluctant

---

[2] Plaintiffs also argue that they would be unable to call the pathologists who conducted the autopsies as witnesses. This is speculative at best. There is no indication at this time that these doctors would refuse to testify in a proceeding based in Tyler. Even if they, their finding are well documented and could be relayed to through a medical expert. The prejudice would be minimal.

to come to trial, and any inmates with relevant knowledge of the Plaintiffs' actions on the days, weeks, and months leading up to their deaths. Defendants would be far more prejudiced in Galveston by their inability to call such important fact witnesses then would Plaintiffs' speculative inability to call nearly a dozen UTMB administrative officials in Tyler. Once again, Plaintiffs' need for these witnesses seems driven more by their response to this motion rather than the reality of the litigation.

**3.     Cost associated to willing witnesses:**

The convenience of the witnesses has often been cited as the most important factor in determining whether a case should be transferred pursuant to §1404(a). *See Continental Airlines Inc. v. Am. Airlines, Inc.,* 805 F. Supp. 1392, 1396 (S.D. Tex. 1992). *See also Radmax*, 720 F.3d at 288-89 (internal citation omitted ("[W]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.")   As noted extensively above, many unit-level witnesses will be necessary to this case. Defendants have identified 87 potential witnesses who live in the Tyler region. (*See* D.E. 12 at Ex. A)  Plaintiffs notion that few unit-level witness would be needed at trial is fanciful for all the reasons listed above.  Moreover, Plaintiffs' notion that TDCJ could just transfer all the inmate witnesses to units near Galveston makes no account for the fact that the transfer of inmates is labor-intensive and costly.  It also makes no account for the security concerns accompany any transfer of an inmate.

Plaintiffs also make the repeated argument that Galveston is more convenient to the individuals located in Huntsville as opposed to Tyler because Huntsville is ten miles closer.  This argument clearly fails.  Even if this were so, travel from Huntsville to Galveston requires

traveling through the Houston metropolitan area during business hours quickly negating any advantage to the ten miles closer proximity.

**4.     Trial in Tyler poses fewer practical problems and is far more expeditious and inexpensive.**

Case law confirms, and Plaintiffs concede, that the location of the alleged wrong is an important factor in the Court's analysis. Once again, Plaintiffs' assertion that UTMB policy is the heart of this case is belied by their claims in this Court and their comments out of it. Moreover, Plaintiffs have sued 16 individuals who work in the Palestine area and only one who lives or works in the Galveston area. The travel, lodging and logistical difficulties posed by bringing over 16 individual defendants to a trial over 220 miles from their place of work is clearly evident and strong supports transfer.

Finally, Plaintiffs' claim that a quick trial is necessary to prevent other non-party inmates from having to endure another summer is also baseless. Plaintiffs have sought nothing more than money damages therefore success at trial would provide no relief to any current inmates. (D.E. 8)

Defendants have shown good cause by demonstrating that a transfer is warranted for the convenience of the parties and witnesses and in the interest of justice. For these reasons, Defendants respectfully pray this Court grant this motion to transfer venue and transfer this case to the Tyler Division, Eastern District of Texas. Defendants also request all other appropriate relief to which they may be entitled.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Chief, Law Enforcement Defense Division

*/s/ Bruce R. Garcia*
**BRUCE R. GARCIA**
Assistant Attorney General
Attorney-in-charge
State Bar No. 07631060
Attorney-in-charge

**RACHAEL AIREN**
Assistant Attorney General
State Bar No. 24068148

**MATTHEW J. GREER**
Assistant Attorney General
State Bar No. 24069825
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
Fax No. (512) 495-9139
**Attorneys for Defendants Eason, Miller and TDCJ**

*/s/Demetri Anastasiadis*
**DEMETRI ANASTASIADIS**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 011 64480
**Attorney for Defendants Livingston, Thaler and Stephens**

## NOTICE OF ELECTRONIC FILING

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas, on this the 17th day of September, 2013.

>  */s/ Bruce R. Garcia*
>  **BRUCE R. GARCIA**
>  Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served electronically via *Southern District of TEXAS LIVE - Document Filing System*, to Plaintiffs' Lead Attorney, Jeff Edwards at **jeff@edwards-law.com** and Defendant UTMB's Lead Attorney, Kim Coogan at **kim.coogan@texasattorneygeneral.gov** on the 17th day of September, 2013.

>  */s/ Bruce R. Garcia*
>  **BRUCE R. GARCIA**
>  Assistant Attorney General