**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ASHLEY ADAMS, *et al.*,** | § | |
| ***Plaintiffs*,** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:13-CV-00712** |
| | § | |
| **BRAD LIVINGSTON, *et al.*,** | § | |
| ***Defendants*.** | § | |

**BRAD LIVINGSTON, RICK THALER AND WILLIAM STEPHENS' REPLY TO
PLAINTIFFS' RESPONSE TO THEIR MOTION TO DISMISS ON THE
BASIS OF QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Brad Livingston, William Stephens, and Rick Thaler, herein referenced as

Defendants, and reply to Plaintiffs' Response to their Motion to Dismiss on the Basis of Qualified

Immunity as follows:

**I.**
**PLAINTIFFS' CONTENTION THAT DEFENDANTS' MOTION TO DISMISS
SHOULD BE TREATED AS A SUMMARY JUDGMENT MOTION**

Plaintiffs claim that because Defendants have set out that Plaintiffs' Amended Complaint

contains what appears to be  an intentionally falsified misquote from the National Weather Service,

that the Motion to Dismiss should be converted to a Motion for Summary Judgment:

> Livingston, Stephens and Thaler include numerous citations on matters
> ranging from the credibility of National Weather Service
> data to the number of people imprisoned in TDCJ facilities.
>
> (Plaintiff's Response, page 1)

In the first place, Defendants do not challenge the credibility of the National Weather

Service. They challenge the credibility of Plaintiffs' counsel for deliberately misquoting the Service

to misrepresent the actual statement of the agency to something it did not state.  The following is the

apparent deliberate misquote found in Paragraph 39 of the Amended Complaint:

> 39.      According to the National Weather Service, "***heat is the number one***
> weather-related killer in the United States, resulting in hundreds of fatalities
> each year."

The following is what the National Weather Service actually posted on its website:

> "Heat is ___one___ of the leading weather-related killer in the United States,
> resulting in hundreds of fatalities each year." (*emphasis added*)[1]

Defendants then noted out that not only did Plaintiffs' counsel appear to deliberately alter the

quote from the Service, but that the altered quote presenting heat as the number one cause of weather

related death was also false: the Centers for Disease Control concluded that 8015 deaths were heat

related and 13,970 deaths were cold weather related during a 21-year period in the United States.

American Meteorological Society July 2005[2], article  entitled "Heat Mortality Versus  Cold

Mortality: A Study of Conflicting Databases in the United States."

Moreover, The New American, December 23, 2008[3], in an article entitled "Heat or Cold:

Which Is More Deadly?" reports that:

> "...statistical evidence shows that cold weather is twice as deadly as hot
> weather...From 1979 to 1997, extreme cold killed roughly twice as many
> Americans as heat waves, according to Indur Goklany of the U.S. Department
> of the Interior," Singer and Avery write.  "Cold spells, in other words, are
> twice as dangerous to our health as hot weather."

Plaintiffs' counsel protest that Defendants' citation of news reports and studies should cause

this Court to convert their Motion to Dismiss into a Summary Judgment Motion, yet their own

---

[1]          http://www.nws.noaa.gov/os/heat/index.shtml

[2]          http://journals.ametsoc.org/doi/pdf/10.1175/BAMS-86-7-937

[3]          http://www.thenewamerican.com/tech/environment/item/6665

Response attaches two exhibits of media reports about pig farms! Perhaps Plaintiff's counsel is not familiar with Federal Rules of Evidence, Rule 201:

> RULE 201. JUDICIAL NOTICE OF ADJUDICATIVE FACTS
>
> (a)      SCOPE.  This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
>
> (b)      KINDS OF FACTS THAT MAY BE JUDICIALLY NOTICED.  The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> (1)      is generally known within the trial court's territorial jurisdiction; or
>
> (2)      can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> c)      TAKING NOTICE.  The court:
>
> (1)      may take judicial notice on its own; or
>
> (2)      must take judicial notice if a party requests it and the court is supplied with the necessary information.
>
> (d)      TIMING.  The court may take judicial notice at any stage of the proceeding

Neither media reports about the leading causes of weather related death or pig farms is material to the issue of the Executive defendants' liability for the death of Plaintiffs' decedents. What is relevant is the apparent attempt by Plaintiffs' counsel to mislead the Court by altering a sentence in a National Weather Service statement from "Heat is ***one*** of the leading weather-related killer in the United States..." to "heat is ***the number one*** weather-related killer in the United States..."  (*emphasis added*.)

**II.**

**PLAINTIFFS' ASSERTION THAT LIVINGSTON, THALER AND STEPHENS ARE LIABLE BECAUSE THEY DID NOT TRANSFER  MEDICALLY HEAT SENSITIVE DECEDENTS TO AN AIR CONDITIONED ENVIRONMENT**

Plaintiffs recklessly assert that the three top TDCJ administrators of a prison agency housing 152, 302[4] inmates have a duty to monitor the medical records of each inmate, determine which medical condition has reached a level of severity that would medically require an air-conditioned environment and then order a transfer of that inmate to an air-conditioned facility based on his medical need.  (Response, p.9).  ("The simplest measure TDCJ could have taken to save these men's lives would be to house them in one of the many available TDCJ housing units that were already air conditioned.")  (Response, p. 27).   Plaintiffs do not explain how a TDCJ top-level security administrator over 152, 303 inmates would have the time, the medical qualifications, the personal involvement or the justification for disturbing the judgments of the administrative and medical staff at the Gurney unit [5] or the Classifications Department[6], who had direct personal observations of each decedent and whose duties consisted of making the determinations that Plaintiffs complain of, including whether they should be transferred to a climate controlled environment.   (Amended Complaint, paragraphs 90-92, 95-96, 105-106) (Response, P.11) (Criticizing the judgments of the Gurney Unit medical and correctional professionals).

---

[4] http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf

[5] The Gurney Unit was accredited by the American Correctional Association in August of 2006. It has a maximum capacity of 2128 inmates, a security staff of 307 and a medical staff of 30. http://www.tdcj.state.tx.us/unit_directory/nd.html

[6] TDCJ organizational structure includes a Classifications Division and a Facilities Division both at the Unit level and for the entire system. pp. 8,9 http://www.tdcj.state.tx.us/documents/executive_services/Org_Structure_FY2011.pdf.

Plaintiffs also do not explain why a top-level security administrator's qualified immunity is defeated because he did not second guess decisions of medical professionals, inmates. *Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

### III.
### PLAINTIFFS' CLAIM THAT INMATES HAVE A CONSTITUTIONAL RIGHT TO 24 HOUR ON SITE MEDICAL CARE

On page 11 of the Response, Plaintiffs claim that these defendants' decision to not provide 24 hour onsite medical care may defeat their qualified immunity.  Plaintiffs do not set forth any clearly established law that requires a prison facility to provide 24 hour onsite medical care.  While Plaintiffs admit that inmates at the Gurney Unit, like free world citizens, were provided the services of a local medical hospital through the 911 system by policy, they do not explain why inmates are constitutionally entitled to more medical care than that available to a member of the general public who does not live at a hospital.  Medical care provided to a prisoner comparable to a community standard does not violate the Constitution.  *Dixon v. Howe*, 44 Fed.Appx. 274, 2002 WL 1891419 *1 (9th Cir. 2002) ["Dixon failed to present evidence to refute defendants' contention that the delay he experienced was comparable to that typical in the medical community.  See, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989)"].

To the extent Plaintiffs claim that the delay in getting medical care was excessive as to the decedents in the case at bar, the facts alleged in the Amended Complaint and in the Response make clear that such delays were due to decisions of Gurney Unit Medical and Correctional staff. (Amended Complaint, paragraphs 156-211) (Response, p.20)

_

## IV.

### PLAINTIFFS' CLAIM THAT DEFENDANTS "FAILED TO PROVIDE CLIMATE CONTROLLED HOUSING, OR COOL THE GURNEY UNIT'S HOUSING AREAS IN ANY WAY, APPROVING POLICIES AND PRACTICES THAT DENIED VULNERABLE PRISONERS SAFE HOUSING;"

On page 3 and 21 of their Response, Plaintiffs claim essentially that defendants violated clearly established law by not providing to inmates their constitutional right to an air conditioned prison.  Plaintiffs admit that the Gurney Unit infirmary is air conditioned and that the medical staff had the authority to order the decedents transferred to a hospital through the 911 system but did not timely do so (Response, pp.19-20).  Defendants are not vicariously liable for the acts or omissions of Gurney Unit medical and correctional staff. *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868, 73 Fed. R. Serv. 3d 837 (2009) ("...respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.")*.*  Moreover, there is no clearly established constitutional right to an air conditioned prison.  *Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012), fn. 6:

> FN6. We also note that, like the *Gates* court, [ *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004)] do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.

## V.

### PLAINTIFFS' CONSTITUTIONAL LIABILITY CLAIM BASED ON THAT "LIVINGSTON, THALER, AND STEPHENS WERE AWARE THE GURNEY UNIT FAILED TO TAKE THE STEPS THE FIFTH CIRCUIT REQUIRED IN *GATES*." [7]

On page 28 of their Response, Plaintiffs claim that these defendants should be liable based on their knowledge that subordinate officials were not taking appropriate heat mitigation steps for

---

[7] *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004) (The district court entered numerous injunctions, including one that "direct[ed] [the prison officials] to provide fans, ice water, and daily showers when the heat index is 90 degrees or above, or alternatively to make such provisions during the months of May through September."  The Fifth Circuit affirmed this injunction.  *Id*. at 340.); *Woods v. Edwards*, 51 F.3d 577 (5th Cir.1995)( mere allegations of high temperatures in a lockdown cell could not support a claim that an inmate was subjected to cruel and unusual punishment); *Valigura v. Mendoza*, 265 Fed.Appx. 232, 235 (5th Cir. 2008) (finding  remedial measures, such as fans, ice water, and showers to mitigate extreme heat, when  employed, constitutionally sufficient and making no finding that air conditioning is constitutionally required).

Gurney Unit inmates.  They admit that these defendants, beginning in May of each year, issued email directives to TDCJ unit staffs that included the following:  "it is imperative that we take an aggressive proactive approach to the heat related issues we are currently facing due to the extreme temperatures."  Amended Complaint, paragraph 107. Plaintiffs, while calling the email directive inadequate, that it also included "...increasing water intake and providing additional fans, neither of which occurred at the Gurney Unit." Amended Complaint, paragraph 123.  Plaintiffs also admit that the TDCJ Administrative level above the Gurney Unit staff did not approve or condone any policy or practice at the Gurney Unit that did not implement the heat mitigation measures available and found Constitutionally acceptable in *Gates v. Cook*, 376 F.3d 323, 339-40 (5th Cir. 2004): (Amended Complaint, paragraph 84)

> While Director Eason has stated the provision of water should occur as much as possible and should not be limited to three times a day, the provision of sufficient water to stay hydrated did not occur at the Gurney Unit.

A subordinate's acts or omissions are insufficient to defeat the qualified immunity of supervisory officials.  *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir.2005) (Supervisory officials cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious or respondeat superior liability):

> With respect to the third prong, we have on several occasions reversed a district court's denial of qualified immunity, persuaded that support was lacking for a conclusion of deliberate indifference on the part of a supervisor.FN26 " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."FN27 "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."FN28 Deliberate indifference requires a showing of more than negligence or even gross negligence. *FN29* "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."

## VI.
## PLAINTIFFS' RELIANCE ON A 2ND CIRCUIT COURT OF APPEALS COLD CASE DOES NOT DEFEAT A TDCJ ADMINISTRATOR'S QUALIFIED IMMUNITY IN THE 5TH CIRCUIT.

Since Plaintiffs have not been able to offer a single case in the Fifth Circuit that would support a finding that the top TDCJ Administration officials lose their qualified immunity by failing to providing air conditioning and failing to usurp the decisions of medical professionals in diagnosis, treatment, medical assignment of inmates, Plaintiffs trot out a 2nd Circuit Court of Appeals that has no relevance to these defendants' qualified immunity- *Corselli v. Coughlin*, 842 F.2d 23, 27 (2nd Cir. 1987), cited on page 23, Response.  Therein, the 2nd Court of Appeals, without discussing the personal involvement of the Commissioner of the New York State Department of Correctional Services, found, citing New York precedent "that deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment."

While that finding is not controversial, it does not even begin to address the specific conduct that the top TDCJ administrators would have to engage in to lose their qualified immunity in a heat case in Texas.  *Corselli* is of little relevance as it is devoid of discussion of any specific conduct or personal involvement of the New York Commissioner.  It is also has no application to the TDCJ Executive defendants' qualified immunity as they are held accountable for violations of clearly established law in the 5th Circuit in dealing with heat issues, not 2nd Circuit law dealing with cold issues.  Heat and cold require different responses by prison administrators. For example, how much water, fans, and ice is provided to Texas inmates during hot Texas weather is of little relevance to the response that would be appropriate by prison staff during a freezing New York winter.

In resolving the TDCJ Executive defendants' qualified immunity, the relevant clearly established law within the 5th Circuit, in the only case that has addressed the qualified immunity of the top TDCJ Administrative official in a prison heat case dismissed, Director Brad Livingston on

the basis of qualified immunity.  *Blackmon v. Kukua, et al*, 758 F.Supp.2d 398 (S.D.Tex.,2010)

("Defendants Latorre, M. Garza, and Livingston are entitled to qualified immunity to the extent that

they could be found liable under the Eighth Amendment at all." (Opinion p. 23).

In the remaining 5th Circuit prison heat cases, not one case has determined that a TDCJ

Director or Correctional Institutions Director's (CID) qualified immunity is defeated nor that they have

a clearly established Constitutional duty to provide air conditioning, make housing assignments of

inmates based on their medical need or otherwise second guess and preempt the judgment of medical

and correctional staff in how best to respond to a specific inmate's medical and health needs.

*Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012), fn. 6 ("We also note that, like the *Gates*

court*,* [ *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004)] do not suggest that air conditioning is

mandatory to meet the requirements of the Eighth Amendment."); *Woods v. Edwards*, 51 F.3d 577

(5th Cir.1995)( mere allegations of high temperatures in a lockdown cell could not support a claim

that an inmate was subjected to cruel and unusual punishment); *Valigura v. Mendoza*, 265 Fed.Appx.

232, 235 (5th Cir. 2008) (finding remedial measures, such as fans, ice water, and showers to mitigate

extreme heat sufficient, when employed to comport with constitutional standards).

Even if this Court were to announce a finding that the TDCJ Director and CID Director

officials have a constitutional duty to provide air conditioned prisons, a duty to micro manage each

TDCJ Unit, a duty to 2nd guess Gurney Unit medical and correctional decisions as to every aspect of

medical and health care, housing classification and assignment, such a finding may not operate

retroactively to defeat qualified immunity because of the absence of reasonable notice.

The Supreme Court has "emphasized . . . 'that the right the official is alleged to have violated

must have been 'clearly established' in a more particularized, and hence more relevant, sense: The

contours of the right must be sufficiently clear that a reasonable official would understand that what

he is doing violates that right.'" *Saucier v. Katz*, 533 U.S. 194, 201- 202 (2001) (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 640 (1987)). Fifth Circuit has not clearly established any TDCJ Executive Administration policy that is Constitutionally required, nor established that the top officials have a duty to medically evaluate inmates, nor order transfer of inmates based on the type or severity of a medical condition, nor a Constitutional right to an air conditioned prison.  Policies that dictate medical decisions on housing assignments, treatments, diagnoses and other medical responses are neither Constitutionally required nor prudent.  As clearly established law provides, such decisions are prudently delegated to medical professionals who have evaluated inmates and made decisions based on personal contact and involvement in the care, supervision and classification of a TDCJ prisoner.

## CONCLUSION

It is not enough to defeat a specific official's qualified immunity based on his own conduct, to show that it is clearly established that a Texas prisoner has a right to a safe living environment. The salient question is whether the state of the law in 2011 gave Livingston, Thaler and Stephens fair warning that their alleged omissions/failure to micro manage a TDCJ Unit was unconstitutional.  The state of the law did not and does not give "fair and clear warning" that the conduct at issue in this case-the issuance of emails and directives to Unit staff to provide additional water and fans and be sensitive to heat distress and heat strokes was so deficient as to violate the Constitution.  Clearly established law dictates the opposite result, specifically holding that the TDCJ director is qualifiedly immune and that policies providing for water, fans and ice are not Constitutionally deficient when appropriately implemented by TDCJ Unit staff. Since the Amended Complaint seeks to defeat qualified immunity in part based on a vicarious liability theory and in part based on policies or the absence thereof that are not Constitutionally required, Defendants Livingston, Thaler and Stephens' qualified immunity shields them from Constitutional liability, given that no clearly established law exists that would have given them reasonable notice that the policies they had and have in place do not comport with Constitutional requirements in the Fifth Circuit.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Civil Litigation

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463.2080 / (512) 495.9139 Fax

**ATTORNEYS FOR DEFENDANTS
BRAD LIVINGSTON, WILLIAM STEPHENS
AND RICK THALER**


**NOTICE OF ELECTRONIC FILING**

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Brad Livingston, Rick Thaler and William Stephens' Reply to Plaintiffs' Response to Their Motion to Dismiss on the Basis of Qualified Immunity** in accordance with the Electronic Case Files system for the Eastern District of Texas, on this the 31st day of October, 2013.

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, certify that a copy of

**Brad Livingston, Rick Thaler and William Stephens' Reply to Plaintiffs' Response to Their**

**Motion to Dismiss on the Basis of Qualified Immunity** has been served electronically via the

Electronic Case Files system of the Eastern District of Texas, on the 31st day of October, 2013,

addressed to:

Jeff Edwards
Jeff@edwards-law.com

Scott Medlock
scott@edwards-law.com
lindsey@edwards-law.com

Bruce Garcia
Bruce.Garcia@texasattorneygeneral.gov

Kim Coogan
Kim.Coogan@texasattorneygeneral.gov


/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General