UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ASHLEY ADAMS, individually and as the representative of the Estate of RODNEY GERALD ADAMS; and WANDA ADAMS, individually;<br><br>CARLETTE HUNTER JAMES, individually and as the representative of the Estate of KENNETH WAYNE JAMES; KRISTY JAMES, KRYSTAL JAMES, KENDRICK JAMES, ARLETT JAMES, JONATHAN JAMES and KENNETH EVANS, individually and as heirs-at-law to the Estate of Kenneth Wayne James, and MARY LOU JAMES, individually,<br><br>CADE HUDSON, individually and as the representative of the Estate of DOUGLAS HUDSON,<br>              PLAINTIFFS<br><br>v.<br>BRAD LIVINGSTON, individually and in his official capacity, JOE OLIVER, NANCY BETTS, L. FIELDS, JOHN DOE, ROBERT LEONARD, BRANDON MATTHEWS, DEBRA GILMORE, SARAH RAINES, DANNY WASHINGTON, MATTHEW SEDA, TULLY FLOWERS, DORIS EDWARDS, LINDA McKNIGHT, REVOYDA DODD, RICK THALER, WILLIAM STEPHENS, ROBERT EASON, DENNIS MILLER, REGINALD GOINGS, and OWEN MURRAY in their individual capacities, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and UNIVERSITY OF TEXAS MEDICAL BRANCH<br>              DEFENDANTS | CIVIL ACTION NO.<br>6:13-CV-712<br><br>JURY DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' LIVINGSTON, STEPHENS AND THALER'S MOTION TO STAY DISCOVERY**

The Court should deny Defendant Livingston, Thaler, and Stephens' motion to stay discovery because they are not entitled to qualified immunity. Moreover, Defendants UTMB and TDCJ do not have a qualified immunity defense, and defendants Eason, Miller, Oliver, Washington, Goings, Gilmore, Dodd, Edwards, Matthews, Raines, Flowers, and TDCJ have also conceded Plaintiffs' Amended Complaint states viable claims. Finally, assuming *arguendo* that there is an immunity issue at play, it requires evidence to resolve factual disputes. As such, at a minimum, the Court should allow limited discovery as necessary to assist it in resolving disputed facts.

### I. FACTS – EXTREME TEMPERATURES INSIDE TEXAS PRISONS ARE KILLING INMATES AT AN ALARMING RATE

Extreme heat conditions inside TDCJ's prisons around the state are killing people – particularly at the Gurney Unit, where Plaintiffs' decedents perished. Though every county jail is required by law to keep indoor temperatures between 65 and 85 degrees, large portions of the inmate housing areas in state prisons are not climate controlled.[1] During the summer, the indoor temperatures prisoners at the Gurney Unit experience are virtually identical to standing outdoors in the hot Texas sun.[2] National Oceanic and Atmospheric Administration documents incorporated into TDCJ's policies recognize heat stroke is "imminent" at these temperatures.[3] Despite this, Livingston, Thaler, and Stephens, the officials ultimately responsible for the prison system's policies, know men are put at grave risk each summer but fail to take any action to protect their lives.

---

[1] Plaintiffs' Amended Complaint, Doc. 8, ¶ 76.

[2] *Id.*, ¶ 40.

[3] *Id.*, ¶ 44.

TDCJ policies and training materials Livingston, Thaler, and Stephens were familiar with identify men like Plaintiffs' decedents, Hudson, James, and Adams, as particularly vulnerable to the heat. Hudson and James each suffered from hypertension – a cardiovascular disease often treated with diuretics that prevent patients' bodies from regulating internal temperatures.[4] Adams and Hudson suffered from depression – a chronic mental illness treated with medications known to increase patients' risk of heat-related illness.[5] Livingston, Thaler, and Stephens knew men with these serious medical conditions were routinely housed in TDCJ's extremely hot prisons.[6]

Moreover, Livingston, Thaler, and Stephens knew prisoners at the Gurney Unit were particularly vulnerable. The Gurney Unit is a "transfer facility" – a prison where inmates are processed into the TDCJ system from the air-conditioned county jails. Because newly arrived prisoners' bodies are not acclimated to the extreme heat, they are at even greater risk of heat stroke.[7] In fact, Hudson, James, and Adams had barely arrived at the prison when they were struck down by the extreme temperatures. Hudson died four days into his short sentence. James only made it three days. And Adams died after less than 24 hours.

---

[4] *Id.*, ¶¶ 141-145, 152 (Hudson), 172 (James).

[5] *Id.*, ¶¶ 146-148, 152 (Hudson), 199-201 (Adams).

[6] *Id.*, ¶ 148.

[7] *Id.*, ¶¶ 74-80.

Sadly, Hudson, James, and Adams were not the only men killed by heat stroke. In fact, beginning in 2007, at least fourteen men died in TDCJ custody from heat stroke, a medical emergency that should never occur inside a government-run facility.[8]

Seven men died at transfer facilities – the Gurney, Hutchins, and Byrd Units. They all had underlying medical conditions Livingston, Thaler, and Stephens *knew* put them at increased risk of injury or death.

As these men began to die, Livingston, Thaler, and Stephens – though actually aware of the imminent danger to vulnerable prisoners with similar medical conditions – made no changes to TDCJ's operations.[9] Two tragic deaths in 2007 should have been a wake-up call – instead, it was business as usual. Those deaths gave Livingston, Thaler, and Stephens actual notice that the extreme heat was dangerous to the point of death, and that they needed to take steps to either cool the prisons or get people with heat-sensitive medical conditions to safe housing.

In addition to housing men in these high temperatures they *knew* were dangerous, Livingston, Thaler, and Stephens also decided to end night-time medical care at the Gurney Unit, which also contributed to Hudson and James' deaths.

## II.   ARGUMENT

To defeat qualified immunity, Plaintiffs must show 1) the official violated a clearly established constitutional right, and 2) the official's conduct was not objectively reasonable. *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012). Qualified immunity

---

[8] These deaths only include fatalities where the medical examiner determined the cause of death was "hyperthermia" – though hyperthermia is an under-reported cause of death, and heat may be a contributing factor in many other deaths. (*Id.*, ¶ 47).  Thus, it is likely the numbers of deaths caused by the extreme heat inside prison living areas is far higher.

[9] *Id.*, ¶¶ 99-115.

4

involves questions of law and fact. *See*, *e.g.*, *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (discussing fact disputes in qualified immunity analysis).

The motion to stay should be denied because, first, Plaintiffs' decedents' rights to be protected from extreme temperatures was clearly established. And second, because Livingston, Thaler, and Stephens' qualified immunity argument turns on fact questions – the defendants' awareness of the dangerous conditions and any steps to decrease the temperatures or protect the vulnerable prisoners from the heat – the Court should not stay discovery necessary to resolve disputed fact issues. Finally, discovery should proceed because there are many other defendants – including TDCJ itself – that cannot assert qualified immunity, as well as many defendants who have not moved for dismissal based on qualified immunity. Livingston, Thaler, and Stephens are also witnesses with information relevant to Plaintiffs' claims against these Defendants.

A. **LIVINGSTON, THALER, AND STEHPENS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW IS CLEARLY ESTABLISHED: SUBJECTING PRISONERS TO EXTREME TEMPERATURES VIOLATE THE EIGHTH AMENDMENT.**

Once a right is clearly established, a decision violating that right is objectively unreasonable. "If a right is clearly established enough to impart fair warning to officers, then their conduct in violating that right cannot be objectively reasonable." *Bishop*, 674 F.3d at 460 (internal citations omitted).

Prisoners' right to be protected from extreme temperatures is clearly established in the Fifth Circuit. The Eighth Amendment prohibits the prison system from housing inmates in conditions that threaten the substantial risk of serious harm – including temperatures threatening heat stroke. *Blackmon v. Garza*, 484 Fed.Appx. 866, 869 (5th Cir. 2012) (unpublished). Federal courts in Texas and the Fifth Circuit have repeatedly

5

found high temperatures unconstitutional (*id.* 869-70), in opinions published long before Hudson, James, and Adams entered the Gurney Unit. *See Blackmon v. Kukua*, 758 F.Supp.2d 398, 413-14 (S.D. Tex. 2010) (collecting cases showing the right was clearly established). Texas courts have even held people criminally liable for leaving dogs in "hot, very hot" cars. *Lopez v. State*, 720 S.W.2d 201, 202 (Tex. App. – San Antonio 1986). At the time Hudson, James, and Adams died, the law was clearly established that prison officials violate the Eighth Amendment by exposing inmates (especially those most vulnerable) to temperatures consistently over 90 degrees. *See, e.g., Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004).

Moreover, the law does not require a right to be precisely defined, for a civil rights plaintiff to defeat qualified immunity. Rather, the "contours of [the] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012). The law must merely "impart fair warning to officers" that their conduct is illegal. *Id*. Plaintiffs do not need to show "the very action in question has previously been held unlawful." *Kinney*, 367 F.3d at 350. "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id*.

Here, the law was clearly established that exposing prisoners with heat sensitive medical conditions to temperatures over 90 degrees violated the Eighth Amendment. *See, e.g., Blackmon*, 484 Fed.Appx. 866; *Gates*, 376 F.3d 323. When conditions make it "likely an inmate would die of heat stroke or some other heat-related illness," prison

6

officials violate inmates' Eighth Amendment rights. *Blackmon*, 484 F.Appx. at 870. Prison officials do not need to "guess beforehand" which inmate will be injured by a dangerous condition if they know that a certain class of prisoners are likely to have their rights violated. *Farmer v. Brennan*, 511 U.S. 825, 843-44 (1994). Though the Fifth Circuit has not yet ruled what protections are required for the prisoners most vulnerable to heat stroke, "a reasonable jury could nonetheless conclude that such measures [TDCJ takes to abate the heat] were inadequate to satisfy the Eighth Amendment's demands." *Blackmon v. Garza*, 484 F.Apx. at 870. When prisoners suffer from medical conditions that make heat stroke – a medical emergency[10] – "possible," let alone "imminent" as alleged here, prison officials must take measures necessary to protect inmates' lives and welfare.

Moreover, Hudson, James, and Adams were denied even the protections the Fifth Circuit upheld in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004). The Amended Complaint alleges:

1) TDCJ does not provide adequate drinking water – both because sufficient ice water was not supplied and because newly arrived prisoners (like Hudson, James, and Adams) could not get cups to drink the cool water with due to a TDCJ policy;[11]

2) Prisoners cannot have personal fans at the Gurney Unit due to TDCJ policies;[12]

3) The Gurney Unit's windows are sealed shut, and cannot be opened for ventilation;[13] and,

---

[10] *Id.*, ¶ 69.

[11] *Id.*, ¶ 83.

[12] *Id.*, ¶ 82.

[13] *Id.*, ¶ 58.

    4)    Newly arrived prisoners must wear the standard prison uniform – not the light-weight clothing or shorts inmates can later buy from the prison commissary.[14]

These decisions are all policy choices made by upper-level officials including Livingston, Thaler, and Stephens. The warden at the prison could not have corrected these policy-level problems if he wanted to. Thus, Livingston, Thaler, and Stephens were aware the Gurney Unit failed to take the minimal steps the Fifth Circuit required in *Gates*. 376 F.3d at 336.

B.    **FACT DISPUTES PRECLUDE STAYING DISCOVERY**

Qualified immunity does not shield defendants from all discovery – it only stops discovery "which is either avoidable or overly broad." *Fleming v. Tunica Co.*, 497 Fed. Appx. 381, 388 (5th Cir. 2012) (per curiam, unpublished). Because Hudson, James, and Adams' rights were clearly established when they died, any request for qualified immunity turns on a fact question. When a qualified immunity defense turns on an issue of fact, not an issue of law, discovery must proceed. *Lion Boulos v. Wilson*, 834 F.2d 504, 509 (5th Cir. 1987).

Discovery should not be stayed "when the defendant's immunity claim turns at least partially on a factual question." *Lion Boulos*, 834 F.2d at 507. *See also Vandagriff v. EFAC, Inc.*, 71 F.3d 877 (5th Cir. 1995) (per curiam, unpublished). At a minimum, Plaintiffs must be allowed to conduct discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claims." *Id*. For example, ignoring Plaintiffs' complaint, Defendants contend they supplied prisoners with sufficient drinking water. Plaintiffs' complaint alleges they did not. This is a fact dispute requiring discovery.

---

[14] *Id.*, ¶ 81.

8

Thus, at a minimum, Plaintiffs must be allowed to direct written discovery to Livingston, Thaler, and Stephens, and take their depositions to determine their personal knowledge of the extreme temperatures in the Gurney Unit when Hudson, James, and Adams died, and what steps (if any) they were taking to lower the temperatures or protect vulnerable prisoners from extreme temperatures.

### C.  LIVINGSTON, THALER, AND STEPHENS ARE ALSO FACT WITNESSES

Even if Livingston, Thaler, and Stephens were actually entitled to qualified immunity, they would still be fact witnesses whose testimony is necessary to resolve Plaintiffs' claims against the remaining Defendants. Livingston, Thaler, and Stephens, for example, are policymakers for TDCJ. Plaintiffs have sued TDCJ for violations of the Americans with Disabilities Act and Rehabilitation Act arguing TDCJ's policies and practices discriminate against people with heat-sensitive disabilities.[15] Qualified immunity does not protect defendants from ADA/Rehabilitation Act claims. In fact, the ADA and Rehabilitation Act create *respondeat superior* liability against TDCJ itself for the discriminatory acts of its employees. *Rideau v. Keller Indep. Sch. Dist.*, 2013 WL 5663580, *3 (N.D. Tex. March 5, 2013) ("under the ADA and RA, a public entity is liable for the vicarious acts of **any** of its employees") (emphasis in original, internal citations omitted). Thus, Plaintiffs are entitled, at a minimum, to take the depositions of Livingston, Thaler, and Stephens to establish TDCJ's liability under the ADA and Rehabilitation Act theories.

---

[15] *See, e.g., id.* ¶ 4.

### D. STAYING DISCOVERY WOULD DELAY CLAIMS AGAINST OTHER DEFENDANTS

Finally, Livingston, Thaler, and Stephens are not sued in isolation. Twelve other defendants have filed an answer, conceding Plaintiffs' Amended Complaint states a claim for relief. Preventing Plaintiffs from conducting discovery against Livingston, Thaler, and Stephens – who will remain witnesses even if they are granted immunity on the pleadings – needlessly delays the proceedings against defendants who do not assert qualified immunity or seek to dismiss Plaintiffs' claims.

### CONCLUSION

Because Livingston, Thaler, and Stephens are not entitled to qualified immunity, their motion to stay discovery should be denied. Alternatively, if the court believes there is a fact dispute that must be resolved to determine whether they are immune, Plaintiffs must be allowed to conduct the discovery necessary to resolve any factual issues. Finally, even if they were entitled to qualified immunity, Plaintiffs are still entitled to take the depositions of Livingston, Thaler, and Stephens as, at a minimum, they are third party witnesses whose testimony is necessary.

DATED: November 4, 2013.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
    Tel.  512-623-7727
    Fax.  512-623-7729

By   /s/ Jeff Edwards

JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Eastern District of Texas.