UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ASHLEY ADAMS, individually and as the representative of the Estate of RODNEY GERALD ADAMS; and WANDA ADAMS, individually; | § § § § | |
| CARLETTE HUNTER JAMES, individually and as the representative of the Estate of KENNETH WAYNE JAMES; KRISTY JAMES, KRYSTAL JAMES, KENDRICK JAMES, ARLETT JAMES, JONATHAN JAMES and KENNETH EVANS, individually and as heirs-at-law to the Estate of Kenneth Wayne James, and MARY LOU JAMES, individually, | § § § § § § § § | |
| CADE HUDSON, individually and as the representative of the Estate of DOUGLAS HUDSON, | § § § § | CIVIL ACTION NO. 6:13-cv-712-KNM |
| PLAINTIFFS | § § § § § | JURY DEMANDED |
| v. | § | |
| BRAD LIVINGSTON, individually and in his official capacity, JOE OLIVER, NANCY BETTS, L. FIELDS, JOHN DOE, ROBERT LEONARD, BRANDON MATTHEWS, DEBRA GILMORE, SARAH RAINES, DANNY WASHINGTON, MATTHEW SEDA, TULLY FLOWERS, DORIS EDWARDS, LINDA McKNIGHT, REVOYDA DODD, RICK THALER, WILLIAM STEPHENS, ROBERT EASON, DENNIS MILLER, REGINALD GOINGS, and OWEN MURRAY in their individual capacities, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and UNIVERSITY OF TEXAS MEDICAL BRANCH | § § § § § § § § § § § § § § § § § | |
| DEFENDANTS | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT FIELDS'
MOTION TO DISMISS UNDER FRCP 12(b)(6)**

**I.     SUMMARY OF THE RESPONSE**

It is well established that a medical provider violates prisoners' constitutional rights when they exhibit deliberate indifference to an inmate's serious medical need.

As Douglas Hudson suffered a fatal heat stroke, it is not disputed that his condition was objectively serious and required medical intervention.

Nevertheless, when Defendant Fields learned that Hudson was in the throes of a heat stroke, Defendant Steven Fields,[1] a licensed vocational nurse with no ability to diagnose conditions or prescribe emergency medical care, contends he did not act with deliberate indifference when he purposefully delayed providing Hudson care for over an hour.

Fields' argument is wholly without merit. Plaintiffs have alleged Fields knew Hudson had collapsed, was convulsing, was hot to the touch, and was suffering a heat stroke. Likewise, Plaintiffs allege Fields knew a heat stroke was a medical emergency that required treatment he, as a licensed vocational nurse, could not provide. But instead of immediately calling 911 to get Hudson to a hospital – the only place a doctor could examine and treat Hudson – Fields purposely delayed Hudson's treatment for over an hour. This is no different than a nurse failing to call 911 as a patient suffers a heart attack, and epitomizes deliberate indifference. *See*, *e.g.*, *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000).

Accordingly, Plaintiffs 42 U.S.C. § 1983 claims should not be dismissed.

## II.    FACTS

By instructing officers to bring Hudson to a different prison instead of immediately telling them to get him to a cool place, pack his body in ice, and call 911, Fields purposely delayed Hudson's access to emergency medical care.

On July 25, 2011, Douglas Hudson suffered a heat stroke while he was a prisoner at the Texas Department of Criminal Justice's Gurney Unit. (Plaintiffs' Amended Complaint, Doc. 8, ¶ 151).[2]

---

[1] The complaint misidentifies Defendant Steven Fields as "L. Fields," but his correct name is Steven Fields.
[2] While not at issue here, Hudson was serving a sentence for driving while intoxicated.

2

At Gurney, temperatures regularly exceeded 100 degrees at the prison in the weeks before Hudson died. (*Id.*, ¶ 150). Though county jails in Texas are required by law to keep indoor air temperatures between 65 and 85 degrees, TDCJ prisons are not air conditioned and no measures are taken to bring down indoor temperatures. *See* 37 TEX. ADMIN. CODE § 259.160; Amended Complaint, ¶ 40. Thus, Hudson was living in a prison dormitory where the indoor heat index was 106 degrees when he stroked. (*Id.*, ¶ 155).

All of the staff working in TDCJ's prisons, including Fields, is well aware that inmate housing areas are not air conditioned, and the temperatures indoors are brutally hot during the summer. (*Id.*, ¶ 134).

Hudson, a sixty-two year-old man, was also at increased risk of heat stroke because he took medications to treat hypertension and depression that interfered with his body's ability to counteract the heat. (*Id.*, ¶ 152).

The morning of July 25, 2011, officers recognized Hudson was ill and took him to the infirmary. He spent most of the day there, one of the few air-conditioned places where prisoners at the Gurney Unit could cool down. At 6:00 pm, however, the infirmary closed for the day, and Hudson was sent back to endure the dangerously hot dorms. (*Id.*, ¶¶ 154-157).

Shortly thereafter, correctional officers found Hudson suffering convulsions and unresponsive in his bunk at the prison. (*Id.*, ¶ 160). They noted his body was hot to the touch, his face was red and flushed, and he could not speak to the officers. (*Id.*). He was suffering a heat stroke.

Because the infirmary staff at the Gurney Unit had left for the day, the officers called Fields, a licensed vocational nurse, at the nearby Beto Unit. The officers told Fields that Hudson was convulsing, unresponsive, and his body was hot to the touch – that he was suffering a heat stroke. The officers told him they believed his condition was "heat related" because "he is very

hot." (*Id.*, ¶ 162). Fields, like all medical providers at the prison, was trained to recognize heat stroke and knew that heat stroke is a "medical emergency." (*Id.*, ¶ 69).

Though he knew Hudson was suffering a heat stroke, he did not tell the officers to begin basic first aid (like packing Hudson's body with ice and taking him to a cool place), or call 911 to transport Hudson to a hospital where a doctor could evaluate and treat him, even though he knew any other course of action would simply delay providing Hudson urgently needed medical care. (*Id.*, ¶¶ 163, 169). Fields, as a licensed vocational nurse, also knew he legally could not make "medical diagnos[es] or prescri[be] … therapeutic or corrective measures" by himself. TEX. OCCUPATIONS CODE Chp. 301.002(5) (defining scope of practice of licensed vocational nurses).

As a consequence of Fields' decision to delay treatment and not to transport Hudson to the hospital, Hudson spent an hour in a hot van going from the Gurney Unit to the Beto Unit. (*Id.*, ¶ 164-168). When Hudson finally arrived at the Beto Unit, he fell out of the transport van, near death. (*Id.*, ¶ 168). His body temperature was 105. (*Id.*, ¶ 169). Only then, after the hour long delay, did Fields bother to call 911.

Fields knew bringing Hudson to the Beto Unit served no medical purpose and would only delay his treatment – there was no doctor or physician's assistant there capable of actually treating him. All Fields could do to help Hudson was order first aid and call 911 – the same options available an hour earlier. Due to Fields' purposeful delay in securing medical treatment, and outright indifference to his condition, Hudson suffered and died a painful death by heat stroke.

### III. ARGUMENT AND AUTHORITIES

#### A. Standard of Review

Motions to dismiss for failure to state a claim are "viewed with disfavor and [are] rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). "Under the 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff," though "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (*citing City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010)). "The complaint must provide more than conclusions, but it need not contain detailed factual allegations." *Turner*, 663 F.3d at 775 (internal citations omitted). The complaint only needs to "allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is correctly pled when the facts go beyond "threadbare recital of the elements of a cause of action, supported by mere conclusory statements." *Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614, 622 (5th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). And when a governmental entity is the defendant, plaintiffs will often not have access to critical documents before conducting discovery. Thus, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 842-43 (S.D. Tex. 2011).

#### B. Defendant Fields Treated Hudson's Condition with Deliberate Indifference

It is well settled that delaying a prisoner's medical care violates the Eighth Amendment if "there has been deliberate indifference that results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (denying summary judgment to nurse who delayed inmate's access to care for four hours). *See also Brown v. Bolin*, 500 Fed. Appx. 309, 315 (5th Cir. 2012)

5

(unpublished) (licensed vocational nurse who delayed prisoner's treatment "undoubtedly acted with deliberate indifference"). This is exactly what the Plaintiffs plead here.

The Fifth Circuit's opinion in *Easter* is controlling. In *Easter*, a nurse refused to provide a prisoner prescribed heart medication when he complained of chest pain. After suffering severe chest pain for several hours, the prisoner finally got the prescribed medication he needed when another nurse gave it to him. *Id*. at 461. Just like the nurse in *Easter*, here, Fields was subjectively aware of Hudson's serious medical condition. And just like the nurse in *Easter*, Fields denied Hudson treatment he knew was urgently needed. Fields knew about the obvious, substantial risk of harm to Hudson, an inmate living in extreme temperatures who was convulsing, non-responsive, and "very hot." Hudson's medical condition, as Fields well knew, was at least as dire as a patient with a heart condition suffering chest pain. *Id*. at 463. *See also Blackmon v. Garza*, 484 Fed.Appx. 866, 873 (5th Cir. 2012) (danger posed by extreme temperatures in TDCJ prisons is obvious). Fields' decision to delay calling 911 and packing Hudson's body with ice demonstrated a "wanton disregard for [a] serious medical need." *Easter*, 467 F.3d at 464.

The cases Fields relies on are easily distinguishable. For example, in *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1997), the prisoner received a medical examination, including an x-ray examined by a radiologist, finding an "unsymptomatic" "old ankle injury." The court specifically noted this was not a "serious" medical problem – unlike an emergent heat stroke.

Fields relies exclusively on cases where *pro se* prisoners received extensive, but unsuccessful, medical care, which is not remotely like the situation here. *See also McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) ("there is no evidence that [the prisoner] was denied medical attention, an in fact, there appears extensive records documenting assessment and

6

treatment of [his] medical complaints by medical practitioners"); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (the prisoner "was afforded extensive medical care by prison officials, who treated him at least once a month for several years, prescribed medicine, gave him medical supplies, and changed his work status to reflect the seriousness of his problem"). Moreover, in each of these cases prisoners were actually examined by medical professionals capable of rendering a diagnosis – unlike Fields, who could not legally diagnose any medical condition, and purposely chose to delay providing Hudson emergency care.

Fields alleged desire to see Hudson is irrelevant because the most he could do after assessing him was still call 911.[3] (Fields' Motion to Dismiss, Doc. 55, p. 7). Nothing Fields could have seen or discovered in person would have expedited treatment for Hudson, or changed a possible course of action. Diagnosing Hudson or making treatment decisions simply exceeded the scope of Fields' license. *See Garner v. Winn Correctional Center*, 2011 WL 2011502, *5 (W.D. La. May 18, 2011) ("providing an LPN to perform the diagnostic duties of a physician for inmates is neither negligence nor medical malpractice; it is a failure to provide appropriate medical care to the inmates for which responsible prison officials may be liable to any inmate harmed thereby.") Fields knew Hudson was living in a dangerously hot environment, was convulsing, non-responsive, "very hot," and in the throes of a heat stroke. As heat stroke is a life-threatening medical emergency, not immediately contacting 911 is deliberate indifference. *See*, *e.g., Brown v. Strain*, 2010 WL 5141215, *8 (E.D. La. Dec. 13, 2010) ("a detainee suffering from an acute medical emergency is constitutionally entitled to prompt medical care"). During this emergency, all Fields could do was call 911 or have the officers place Hudson in ice. He did

---

[3] Fields' alleged desire to personally examine Hudson is also beyond the pleadings, and cannot be considered on a motion to dismiss. For the purpose of the motion to dismiss, the Court must accept Plaintiffs' pleadings as true – that Fields deliberately chose to delay Hudson's access to health care while Hudson was in the midst of a heat stroke. (Plaintiffs' Amended Complaint, ¶ 221).

7

neither. Instead, he decided to delay securing Hudson life-saving medical care for more than an hour.[4]

Likewise, *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752 (5th Cir. 2001) supports Plaintiffs' claims, not Defendant Fields. *Domino* is a classic case of a doctor misdiagnosing a prisoner's condition – a psychiatrist failed to determine a prisoner intended to commit suicide.[5] The prisoner's survivors could not prove the psychiatrist was subjectively aware of the risk of suicide because he (mistakenly) concluded the prisoner was fine after an examination. In other words, a medical professional actually capable of diagnosing and treating the prisoner actually examined him and determined he was unlikely to kill himself. This is not remotely like what happened here. The correct analogy would be if Fields had sent Hudson to the emergency room, but the ER physician incorrectly determined Hudson had a cold.

Instead, Fields acted like he could diagnose and treat Hudson, even though he knew he absolutely could not.

> If … the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.

*Sealock*, 218 F.3d at 1211 (physician's assistant who failed to send heart attack patient to hospital was deliberately indifferent). While "the decision whether to provide additional treatment is a classic example of a matter of medical judgment," here, Fields legally could not make a medical judgment and delayed Hudson's access to someone who could. *Domino*, 239 F.3d at 756.

---

[4] Indeed, Fields knew that, because of the Beto and Gurney Units' remote locations, that waiting for an ambulance to be dispatched and arrive would further delay getting Hudson to a hospital. (*Id.*, ¶ 170).

[5] The Circuit specifically noted "suicide is inherently difficult for anyone to predict, particularly in the depressing prison setting." *Domino*, 239 F.3d at 756.

### C. Fields is Not Entitled to Qualified Immunity

To defeat qualified immunity, Plaintiffs need only show 1) the official violated a clearly established constitutional right, and 2) the official's conduct was not objectively reasonable. *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012). As discussed above, Hudson had a clearly established constitutional right to receive emergency medical care without delay.

Once a right is clearly established, a decision violating that right is objectively unreasonable. "If a right is clearly established enough to impart fair warning to officers, then their conduct in violating that right cannot be objectively reasonable." *Id*. (internal citations omitted).

The Fifth Circuit has previously denied qualified immunity to corrections officials who delayed calling an ambulance after a prisoner suffered a heat stroke. *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) (a failure to call an ambulance for almost two hours while a prisoner is unresponsive "rises to the level of deliberate indifference"). Thus, Hudson's right to prompt medical attention was clearly established well before Fields' decision to delay medical treatment. *Austin* is directly on point, providing Fields more than "fair warning" delaying Hudson's medical care violated his constitutional rights. *See id*. ("officers need only have 'fair warning' that their conduct is unlawful") (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). "[A] reasonable person would not have waited nearly two hours to call an ambulance once [the prisoner] became unconscious." *Id*.

Fields knew the care Hudson needed was unavailable at the Beto Unit, but he chose to bring him there instead of immediately getting him to a hospital. Fields' choice to bring Hudson to the Beto Unit, despite knowing he was suffering a heat stroke and needed an emergency room, is the equivalent to a nurse failing to treat a prisoner suffering chest pains. *Easter*, 467 F.3d at 463; *Sealock*, 218 F.3d at 1211.

**CONCLUSION**

For the foregoing reasons, the Court should deny Fields' motion. In the alternative, should the Court feel that the pleadings are deficient in any way, Plaintiffs would respectfully ask for leave to amend, and would request the opportunity to depose Fields to more fully develop the factual record.

DATED: January 16, 2014.

                Respectfully submitted,

                The Edwards Law Firm
                The Haehnel Building
                1101 East 11th Street
                Austin, Texas 78702
                      Tel.   512-623-7727
                      Fax.  512-623-7729

                By    /s/ Jeff Edwards
                JEFF EDWARDS
                State Bar No. 24014406
                Lead Counsel

                Scott Medlock
                State Bar No. 24044783
                Brian McGiverin
                State Bar No. 24067760
                James C. Harrington
                State Bar No. 09048500

                TEXAS CIVIL RIGHTS PROJECT
                1405 Montopolis Drive
                Austin, TX 78741
                (512) 474-5073 [phone]
                (512) 474-0726 [fax]

                ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

      By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Eastern District of Texas.

                                                By      /s/ Jeff Edwards
                                                JEFF EDWARDS