UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ASHLEY ADAMS, individually and as the representative of the Estate of RODNEY GERALD ADAMS, and WANDA ADAMS, individually, et al., § § § § CARLETTE HUNTER JAMES, individually and as the § representative of the Estate of KENNETH WAYNE JAMES; § KRISTY JAMES, KRYSTAL, KENDRICK JAMES, § ARLETT JAMES, JONATHAN JAMES and KENNETH § EVANS, individually and as heirs-at-law to the Estate of § Kenneth Wayne James, and MARY LOU JAMES, § individually, § § CADE HUDSON, individually and as the § representative of the Estate of DOUGLAS HUDSON, § § *Plaintiffs*, § § v.                                                          § § BRAD LIVINGSTON, et al.                                    § § *Defendants*.                                                     § | Civil Action No. 4:14-cv-03326 JURY DEMAND |

**PLAINTIFFS' DESIGNATION OF EXPERT WITNESSES & DISCLOSURES**

Plaintiffs in the above numbered action respectfully submit this Designation of Expert Witnesses and Disclosures:

    **A.**    **Retained Experts**

    **1.**    **Dr. Susi Vassallo, M.D.**

Dr. Vassallo is a physician licensed to practice Medicine in Texas and New York State. She is Board Certified in Emergency Medicine and Medical Toxicology. She is on the faculty of New York University Medical School, and is also an associate professor at the Dell School of Medicine in Austin, Texas. Her medical expertise includes thermoregulation and the consequences of extreme heat on people. Her CV, fee schedule, and list of testimony for the previous four years have been contemporaneously produced to the Defendants.

She will testify human bodies dissipate heat by evaporative cooling and dilation of the blood vessels, and by losing sweat through the skin. Sweating cools the body through evaporation, however high relative humidity limits evaporation, and

the body cannot get rid of its heat. When heat gain by the body exceeds the amount the body can remove, body temperature begins to rise, increasing the risk of heat-related illnesses. She will describe the medical aspects of heat related illness and symptoms, how to protect against them, and risk factors that exacerbate a person's risk of heat-related illnesses.

She will testify it is well known that certain medical conditions, along with other factors like age, increase the body's intolerance to extreme temperatures. She will also testify that it is well known that certain medications, including psychotropic medications, increase the risk of heat-related illness and symptoms. She will discuss the medical and physiological aspects of how each condition or medication increases the risk of heat-related illness. She will discuss the various types of heat-related illnesses and their symptoms. She will testify that all forms of heat-related illness are preventable with appropriate protective measures. She will discuss medical literature regarding the effects of heat on the human body, heat-related illness including heat stroke, as well as risk, mortality, and morbidity from exposure to heat and heat waves, and the increased risk of heat to people with certain medical conditions and/or taking certain medications.

She will testify about the medical conditions and medications of Douglas Hudson, Kenneth Wayne James, Rodney Adams and other inmates who have been injured or killed by the heat inside TDCJ facilities. She will testify that all inmates at the Gurney Unit were at substantial risk of serious heat-related illness due to their prolonged exposure to high heat index temperatures in the facility's housing areas. For Douglas Hudson, Kenneth Wayne James, and Rodney Adams specifically, she will testify that each man had medical conditions/disabilities and took medications that significantly increased their heat sensitivity; and that these medical conditions/disabilities and medications put them at an ever greater risk of serious heat-related illness beyond the substantial risk for other inmates. She will testify about, each man's general medical and health conditions as known from available documentation, and the contents of each man's medical records.

Dr. Vassallo will also provide medical causation opinion testimony, and specifically that Douglas Hudson, Kenneth Wayne James, and Rodney Adams' cause of death was heat stroke resulting from the high temperatures in their housing areas at the Gurney Unit.

She will testify that the temperatures and heat indexes inside the housing areas at the Gurney Unit in the summer markedly increased each man's risk of serious heat-related illness, including heat stroke, creating a substantial risk. She will testify this is well-known in the medical community, and reflected in TDCJ and UTMB policies governing extreme temperatures, especially for inmates like Douglas Hudson, Kenneth Wayne James, and Rodney Adams.

She will testify that TDCJ and UTMB policies, procedures, and practices at the Gurney Unit, were obviously inadequate to protect prisoners like Douglas Hudson, Kenneth Wayne James, and Rodney Adams from extreme temperatures,

caused their deaths and amounted to a reckless infliction of medical risk and suffering. She will testify that with different UTMB and TDCJ policies and practices in place for addressing heat illness, the lives of each of these men could have been saved in reasonable medical certainty.

She will testify that Douglas Hudson, Kenneth Wayne James, Rodney Adams, and all prisoners in the Gurney Unit should have been housed in air conditioning. She will also testify about various measures short of air conditioning that Defendants should have taken in an attempt to lessen the heat risk to Douglas Hudson, Kenneth Wayne James, and Rodney Adams She will testify that TDCJ and UTMB's then-existing protections for prisoners regarding heat were medically inadequate, so and Douglas Hudson, Kenneth Wayne James, Rodney Adams, and other inmates remained at substantial risk from the heat. Dr. Vassallo will also testify that these measures were even less effective for inmates like Douglas Hudson, Kenneth Wayne James, and Rodney Adams in the Gurney Unit who would not have acclimated to the heat.

Dr. Vassallo will testify that TDCJ, UTMB, and the other Defendants were aware that their policies and practices put inmates like Douglas Hudson, Kenneth Wayne James, and Rodney Adams in danger based upon documented evidence, the prior deaths of similarly situated inmates, and the history of heat-related illness inside TDCJ facilities. She will further testify that the risk to Douglas Hudson, Kenneth Wayne James, and Rodney Adams, and the solutions to that risk, was obvious.

The Fifth Circuit relied on Dr. Vassallo's opinions in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) and *Ball v. LeBlanc*, 2015 WL 4114473 (5th Cir. 2015). This Court relied upon her opinions in a related case, *Cole v. Livingston* (now *Collier*), No. 4:14-cv-001698.

Dr. Vassallo's opinions and their bases are described in greater detail in her Rule 26 expert report, enclosed with this designation.

2. **Michael McGeehin, Ph.D**

Michael McGeehin holds a Ph.D. in Environmental Health Sciences and an M.S.P.H. in Epidemiology. Dr. McGeehin is the former Division Director of Environmental Health Effects at the Centers for Disease Control and Prevention (CDC) and worked at the CDC as an epidemiologist for thirty-three years. Dr. McGeehin held his position as Division Director for more than fifteen years. As a Division Director, Dr. McGeehin led research on the effects of extreme heat and was regularly asked to consult with state health departments and federal agencies concerning the same.

Dr. McGeehin will testify about the dangers of high temperatures and humidity from an epidemiological perspective. Epidemiology identifies risks to human health based on exposure of population groups to environmental conditions, such as extreme heat. He will testify that epidemiological studies are especially useful to policymakers to making informed decisions about protecting human health, and will describe various studies and other literature regarding the risks of heat to human health.

Dr. McGeehin will testify it is well-established that prolonged exposure to high apparent temperatures causes heat-related illnesses, including heat cramps, heat syncope, heat exhaustion, heat stroke, and death. He will testify that the entire population is at significantly increased risk of heat-related injury, illness, or death with prolonged exposure to high heat index temperatures, including people with and without identifiable risk factors. He will testify about typical presentation of each of these heat-related conditions. He will testify that prolonged exposure to extreme heat results not only in traditionally defined heat illnesses such as heat stroke and heat exhaustion, but also other medical events that are caused or exacerbated by the heat. He will testify the risk of illness in general and heat-related illness specifically climbs higher during extreme heat events, or "heat waves."

Dr. McGeehin will testify that heat-related illnesses and injuries are often vastly under-reported, or go unrecognized by treating medical personnel. Despite this, he will testify that, on average, hundreds of people die each year in the United States from heat-related causes, and that more people die in the United States from extreme heat events than any other natural disaster. He will testify that most of these people die indoors. He will testify that TDCJ suffers from the same under-reporting and that a larger proportion of the TDCJ population dies from heat inside TDCJ compared to the proportion in the US at large.

Dr. McGeehin will testify that certain populations are at much greater risk of heat-related injury, illness, or death, including the elderly, people with certain chronic illnesses and medical conditions (including obesity, heart disease, diabetes, and mental illnesses), those taking certain medications, and people in institutional settings (including prisons or jails).

Dr. McGeehin will testify that access to air conditioning significantly reduces the risk of heat-related illness or injury, and reduces the risk far more than other preventative measures. In a completely controlled environment, such as a prison, air conditioning would completely eliminate the risk of heat-related illness and death. He will testify that scientific literature does not support TDCJ's reliance upon only measures other than air conditioning in reducing the risk of extreme heat. He will testify that use of fans is actually counter-productive at certain heat indices above 95 degrees. He will testify TDCJ's policies in effect at the Gurney Unit in 2011 and 2012 were grossly and obviously inadequate to address summer heat in Texas generally, to protect inmate health, or to address extreme heat events. He will address each of the practices in place in 2011 and 2012 and testify

that they are not adequate to protect against the substantial risk of serious harm to Douglas Hudson, Kenneth Wayne James, Rodney Adams or inmates like them, and Douglas Hudson, Kenneth Wayne James, and Rodney Adams remained at substantial risk of harm.

Dr. McGeehin will testify that the inadequacy of the measures in place in 2011 and 2012 was obvious and that the lack of urgency, by TDCJ during 2011, 2012 and today, is alarming.

Dr. McGeehin will testify that, from an epidemiological perspective, "heat" includes both temperature and humidity. He will testify that the common measure epidemiologists utilize is the "heat index" as promulgated by the National Weather Service. He will testify that in some buildings, the heat index is actually higher indoors than outdoors during summer months.

Dr. McGeehin will testify that government agencies in the Southern United States have almost universally adopted air conditioning as a basic necessity in their facilities.

Dr. McGeehin will testify that, based on his review of the temperature records at the Gurney Unit, that he would have been greatly concerned about inmate safety before and during the summers of 2011 and 2012. He will testify that the heat indices indoors were high and unrelenting, significantly increasing the risk of illness, injury, or death to the inmates. He will testify these heat indices place all people at significantly increased risk. He will address matters raised by Defendants' experts in their reports and any testimony.

Dr. McGeehin will testify that the population characteristics of the Gurney Unit as well as Douglas Hudson, Kenneth James, and Rodney Adams in particular placed inmates at particularly increased risk for serious heat related illness. He will testify that the Gurney Unit's population skews un-acclimated compared to the general population.

Dr. McGeehin will be paid $185.00 per hour for report writing and document review, and $2,000 per day (or any part thereof) for testimony at trial or by deposition.

Dr. McGeehin's opinions and their bases are described in greater detail in his Rule 26 expert report, enclosed with this designation.

3. **Secretary Eldon Vail (ret.)**

Eldon Vail is the former secretary of the Washington State Department of Corrections. He has nearly 35 years of experience in adult and juvenile corrections, holding various line and supervisory positions in prisons and jails in Washington State. He served as the warden of three adult prisons that housed maximum, medium, and minimum-security inmates. He was the deputy secretary

of the Washington Department of Corrections for seven years, and the Secretary of the Department of Corrections for four years before his retirement.

Sec. Vail will testify there is no penological purpose for keeping indoor temperatures in prisons high during the summer. He will testify that prisons similar to the Gurney Unit in Washington State and throughout the country are air conditioned expressly to protect the health and welfare of the inmates they house. He will testify that Texas and other states have regulations requiring correctional facilities, like county jails, to keep indoor temperatures in a range between 65 and 85 degrees.

Sec. Vail will testify that when faced with the decision about whether to air condition new or refurbished prisons that including air conditioning was a deliberate choice made in Washington State expressly to protect inmate safety and welfare. He will testify that prison policymakers in Washington State knew this decision may be politically unpopular, but that it was necessary.

Sec. Vail will testify that, from a correctional perspective, the heat-mitigation measures in place at the Gurney Unit during 2011 and 2012 were insufficient to protect inmate health and safety, and that air-conditioning the prison should be mandatory.

Sec. Vail will testify that air conditioning the Gurney Unit would likely make the prison at least marginally safer strictly from a security perspective. Air conditioning would allow correctional officers to focus on other duties, likely lower rates of violence, and remove security risks created by TDCJ's current decision to not air condition the facility. Based on his experience working in and supervising air-conditioned prisons, he is unaware of any additional security risks that would be created by installation of air conditioning.

Sec. Vail will testify that the decision to use climate control devices in livestock barns, but not inmate housing areas, is extremely disturbing.

Sec. Vail will testify that each of the named Defendants and executives of TDCJ and UTMB knew before Douglas Hudson's, Kenneth Wayne James's, and Rodney Adams' deaths that their decision to house inmates who were not acclimated to the heat, including Douglas Hudson, Kenneth Wayne James, and Rodney Adams, in the Gurney Unit without air conditioning exposed them to an unacceptable risk of serious harm including death. Sec. Vail will testify that executives of TDCJ and UTMB specifically knew that inmates taking psychotropic medications had died from indoor heat prior to 2011 in spite of existing practices such as encouraging inmates to drink ice water, and that such prisoners were at an especially elevated heat risk including for heat stroke, but that they took obviously inadequate steps to protect Mr. Adams and other inmates like him from the heat. Sec. Vail will testify that placing heat sensitive and un-acclimated inmates life Douglas Hudson, Kenneth Wayne James, and Rodney Adams in un-air conditioned housing is not a choice that a reasonable correctional

6

official would make and this decision was not justified by any legitimate penological purpose. Sec. Vail will testify that the TDCJ executives egregiously failed to investigate or analyze the number and severity of heat vulnerable inmates, their capacity to place heat vulnerable inmates in existing air conditioned housing, or the cost or feasibility of adding air conditioned housing. Sec. Vail will testify that the executives of TDCJ and UTMB were deliberately indifferent to the safety of Douglas Hudson, Kenneth Wayne James, and Rodney Adams and similar inmates. Sec. Vail will further testify that the wardens of the Gurney Unit knew of the same risk prior to Douglas Hudson's, Kenneth Wayne James's, and Rodney Adams' deaths, but was deliberately indifferent to the risk these men and other inmates. Sec. Vail will testify that the individual officers and medical staff who delayed Mr. James' access to medical care until it was too late were deliberately indifferent to the risk and symptoms of his heat illness and the need for immediate emergency medical attention. Similarly, Sec. Vail will testify that the needless delay in treatment caused by the correctional and medical staff involved in Mr. Hudson's death was deliberately indifferent in light of his obvious medical emergency and their knowledge that transporting Mr. Hudson to Beto would cause a delay in obtaining the required care. He will testify that UTMB and TDCJ had plainly inadequate policies and practices and training to respond to heat illnesses and obtain urgently needed medical care in a timely fashion. He will address matters raised by Defendants' experts in their reports and any testimony.

Sec. Vail will be paid $175.00 per hour for report writing and document review, and $1,500 per day (or any part thereof) for testimony at trial or by deposition.

Sec. Vail's opinions and their bases are described in greater detail in his Rule 26 expert report, enclosed with this designation.

4. **Dr. Pablo Stewart, M.D.**

Dr. Pablo Stewart, M.D. is a licensed physician with a specialty in clinical and forensic psychiatry. Dr. Stewart has experience as a practicing psychiatrist, the supervisor of psychiatrists at San Francisco General Hospital, psychiatrist for a maximum security psychiatric ward at the same hospital, and supervisor of psychiatry for the inmate population across county jails in San Francisco. Dr. Stewart has served as a court-appointed psychiatric expert in the federal cases *Gates v. Deukmejian*, E.D. Cal. Case No. CIV S-87-1636 and *Ashoor Rasho v. Director John R. Baldwin*, No.:1:07-CV-1298-MMM-JEH.

Dr. Stewart will testify that Mr. Adams had documented mental disabilities including major depressive disorder and schizophrenia, for which he was taking the antipsychotic medication Cogentin and also the antidepressant Cymbalta. Mr. Adams also took the medication Vistaril. Dr. Stewart will testify that these disabilities and medications are widely known to greatly increase a patient's sensitivity to heat and the risk of serious illness and death from exposure to heat.

7

Dr. Stewart will further testify that the heat inside Rodney Adams' housing area at the Gurney Unit in the summer of 2011 created a substantial risk of serious harm, including death, from heat illnesses including heat stroke. He will testify this risk and the heat sensitivity of men like Mr. Adams due to his mental illness and medications is well-known in the psychiatric community, and reflected in TDCJ and UTMB policies governing extreme temperatures, and the medical and scientific literature

Dr. Stewart will testify that UTMB and TDCJ policies, procedures, and practices at the Gurney Unit, failed to protect prisoners like Rodney Adams from extreme temperatures, failed to accommodate his disabilities that made him heat sensitive, caused Rodney Adams's death and amounted to deliberate indifference to the risk he faced from the heat. He will testify that

Dr. Stewart will also provide medical causation opinion testimony, and specifically that Mr. Adams' cause of death was heat stroke resulting from the high temperatures in his housing areas.

Dr. Stewart will testify that air conditioning would have prevented Mr. Adams' death and was medically necessary to protect Mr. Adams' health. He will testify that UTMB and TDCJ's then-existing protections for prisoners regarding heat were medically inadequate, and thatMr. Adams and similarly situated inmates remained at substantial risk of serious harm from the heat despite the measures taken by TDCJ and UTMB.Dr. Stewart will testify that Mr. Adams and other similar prisoners should have been housed in air conditioning, and Defendants' failure to do so was egregious and amounted to deliberate indifference.  He will also testify that without air conditioned housing, Defendants should have taken other steps to attempt to accommodate Mr. Adams' disabilities that made him heat vulnerable and attempt to lessen the heat risk to Mr. Adams and other inmates like him in the Gurney Unit, including relocating them to a cooler facility, placing them in air conditioning for certain amounts of time each day in the summer, performing frequent wellness checks beginning immediately upon arrival at the prison, and monitoring and documenting their fluid intake and urine output.

Dr. Stewart will testify that TDCJ, UTMB, and the other Defendants were aware that their policies and practices put inmates like Mr. Adams in danger based upon documented evidence, the prior deaths of similarly situated inmates, the history of heat-related illness inside TDCJ facilities, and that their conduct amounted to deliberate indifference to the known and obvious heat risk to inmates like Mr. Adams. He will further testify that the risk to Mr. Adams, and the solution to that risk, was obvious. He will address matters raised by Defendants' experts in their reports and any testimony.

Dr. Stewart will be paid $350.00 per hour for report writing,  document review, and for deposition or trial testimony.

> Dr. Stewart's opinions and their bases are described in greater detail in his Rule 26 expert report, enclosed with this designation.

These witnesses' opinions are based on TDCJ and UTMB policies, health care records, American Correctional Association standards, any literature they may have relied upon, statements and depositions taken in this cause (and exhibits thereto), documents produced by Defendants in this cause and related cases in discovery and pursuant to Public Information Act requests, and the policies relevant to the operation of the Gurney Unit, and their education, training and experience, as well as additional documents identified in their reports.

Expected exhibits to which these witnesses may refer or rely upon when giving their testimony at trial are not fully known at this time but are expected to include related TDCJ and UTMB records, health care records, relevant literature, any written report of these witnesses or other witnesses and any of the testimony of any party or other witness, the documents produced in this cause and related cases in discovery and pursuant to Public Information Act requests, articles concerning the events and TDCJ and UTMB policies, depositions in this cause, and exhibits to said depositions. These witnesses may refer to or rely upon any exhibit shown to or admitted into evidence by any other witness.

**B.    Non-Retained Experts**

**1.    Medical Providers to Douglas Hudson, Kenneth James, and Rodney Adams**

The following persons are medical providers, including physicians, pathologists, technicians, nurses, paramedics, radiologists, physician's assistants, healthcare providers, clinics, hospitals and their agents, representatives and employees, where, or by whom, Douglas Hudson, Kenneth Wayne James, and Rodney Adams and other TDCJ prisoners at the Gurney facility received medical care and treatment. Plaintiffs identify all health care providers who provided and/or failed to provide care to Douglas Hudson, Kenneth Wayne James, and Rodney Adams, including but not limited to, the following health care providers, as persons who may give expert testimony at the trial of this cause. To the extent it is necessary to call live at the trial of or deposition in this cause any custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge.

The health care providers listed below are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses (and therefore have not provided to Plaintiffs any specific written report other than their respective medical records); therefore, for the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to their medical records of Douglas Hudson, Kenneth Wayne James, and Rodney Adams and any deposition testimony given or to be given by any such healthcare providers.

Dr. Joseph Penn, M.D.
Dr. Glenda Adams, M.D.

9

Dr. Charles Adams, M.D.
Dr. Ben G. Raimer, M.D.
Dr. Margarita de la Garza-Grahm, M.D.
Dr. Harold K. Berenzweig, M.D.
Dr. Cynthia Jumper, M.D.
Dr. Gary Wright, DO
Dr. Fausto Avila, M.D.
Dr. Owen Murray, M.D.
Dr. Joe Oliver, M.D.
Dr. Marieta Jugueta, M.D.
Dr. Darrell Wilburn, M.D.
Dr. J. K. Gray, M.D.
Dr. Koshy, M.D.
Dr. Xu, M.D.
Stephanie Zepeda
Beverly Echols
John Pulvino
Jeffrey Copeland
Donna Sulzenberger
David Walker
Gerald Campbell
Judith Aronson
Keith Pinckard
Linda McKnight
Steven Fields
Nancy Betts
Danny Washington
Billy Millwee
Kerri Wardell
Janice Birdow
Therisa Lamb
Wilma Turner
Janie Hill
Pauline Miller
Waynetta Eggleston
Cynthia Wilbanks
Feddia Milton
Lynita Shultz
Caroline Carnathan
Donna Stelly
Portia Hatten
Kelli Taylor
Ruth Orloff
Joseph Mithcell
David Fortner
Kelly Maxwell
Angela Taylor

Lisa Blalack
Debbie Rinehart
Kathy Keith
Janice Russ
Monica Crawford
Gregory Schaller
Shawna Sutton
Courtney Barriera
Tiffany Hanson
Tia McMorris
Mona Delacerda
Rhonda Greer
Ashley Roper
Jennifer Lewis
Stephen Smith
Christine Martin
Britnye Moore
Stephen Smith
Louis Kavetski
Pamela Graves
Cindy Martinez
Christopher Lively
Peggy Bennett
Joshua Stanford
Dixie Pate
Philip Hall
Lydia Thornley
c/o Lee Haney
Office of the Attorney General

Dr. Lannette Linthicum, M.D.
Dr. Kathryn Buskirk/Means, M.D.
Dr. Robert Williams, M.D.
Sarah Abke
George Crippen
Justin Robison
Phyllis McWhorter
Gary Eubank
Jason Chavers
Jerri Robison
Sheila Curry
c/o Harold Liller
Office of the Attorney General

Lipscomb
Paige
Brewer

Hafferd
Stanley
Carnathan
Hallmark
Wardell
M. Danica
W. Pearson
Coates
J. McCarty
Unidentified persons at the Gurney medical clinic at relevant times
c/o Lee Haney
Office of the Attorney General

Dr. Colin Marino, M.D.
Dr. David I. Jones, M.D.
Dr. John P. Andrews, M.D.
Dr. Lisa Dix-Emperador, M.D.
Dr. William Conner, M.D.
Christine Porter
East Texas Medical Center
1000 South Beckham
Tyler, Texas 75701

Dr. Thomas J. O'Neill, M.D.
Dr. Johnny Haley, M.D.
Dr. Tapati Ghosh, M.D.
Dr. Thomas Chick, M.D.
Dr. Cesar Cua Uy, M.D.
Dr. Ronald Thomas, M.D.
Dr. Clinton Brunson, M.D.
Dr. Michael Gorby, M.D.
Dr. Heidi Knowles, M.D.
Tricia Frazier
Karla Morrow
Palestine Regional Medical Center
2900 South Loop 256
Palestine, Texas 75801

J. Nix
Intrepid Emergency Medical Service
822 LCR 828
Donie, Texas 75838

St. Clair Doug
Jacob Wendy
Neel Mark
Johnson Bryan

Palestine Regional Medical Center
2900 South Loop 256
Palestine, Texas 75801
or Unknown address

Carla Catania
Wise County Jail

Burnett County Jail

Dr. Andrew Segal, M.D.
801 W. Road to Sixflags
Arlington, Texas 76012

Vencor Hospital - Mansfield
1802 Hwy 157 N
Fort Worth, Texas 76063

For the subject matter on which the medical providers will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer to their respective medical records and other documents produced in discovery in this case. It is anticipated that these witnesses may provide opinions regarding the conditions in the Gurney Unit and TDCJ generally, medical conditions of Douglas Hudson, Kenneth James, Rodney Adams, and other Gurney Unit inmates, and the effects of heat on the human body generally.

2.  **Correctional Officers**

The following persons are current and former correctional officers or other officials at the Gurney Unit and Texas Department of Criminal Justice. Plaintiffs identify all correctional officers with knowledge of the Texas Department of Criminal Justice and Gurney Unit's practices, and specific knowledge concerning the facts described in the complaint and all amendments thereto, as well as any practices at the prison, including but not limited to the following, as persons who may give expert testimony at the trial of this cause. To the extent it is necessary Plaintiffs reserve the right to call live at the trial of or deposition in this cause any custodian of records for the correctional facility. Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question.

The correctional officers listed below are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses (and therefore have not provided to Plaintiffs any specific written report or curriculum vitae). For the subject matter on which they will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer the records/documents produced to date and to any deposition testimony given or to be given by any such individuals.

All correctional officers at the Gurney Unit and/or officials listed in the documents produced to date, including but not limited to

William Stephens
Robert Eason
Phillip Solly
Gary Sarchet
Karen Hall
Jason Clark
Michelle Lyons
Taryn Johns
James Brown
Adams Lesli
Paul Yancey
Hollis Murray
Jesse Maberry
Kelly Guidry
Reginald Goings
Dennis Miller
Revoyda Dodd
Debra Gilmore
Bryan Collier
Doris Edwards
Robert Leonard
Sarah Raines
Brandon Matthews

Rick Thaler
Matthew Seda
Tully Flowers
c/o Harold Liller
Office of the Attorney General

Lance Lowry
AFSCME/CEC7
Barret Professional Bldg.
1314 10th Street, Suite 230
Huntsville, Texas 77320

Tony Johnson
Justice of the Peace for Cherokee County Precinct #2
P.O. Box 553
109 W. San Antonio
Alto, TX 75925
Telephone: (936) 858-4732
Fax (936) 858-2271
Email: ccjp2@cocherokee.org

For the subject matter on which the corrections officials will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer to their depositions and other records they reviewed or created produced in discovery in this case. It is anticipated that these witnesses may provide opinions regarding the conditions in the Gurney Unit and TDCJ generally, and security practices both at the Gurney Unit and in TDCJ generally.

D. Plaintiffs reserve the right to elicit, by way of cross-examination, opinion testimony from experts designated or to be designated and called by other parties to the suit. Plaintiffs also reserve the right to elicit, by way of cross-examination, opinion testimony from Defendants and their employees. Plaintiffs express their intention to possibly call, as witnesses associated with adverse parties, any of Defendant's experts and/or employees (or former employees) of Defendants TDCJ and UTMB. Plaintiffs do not have any control over any such witness to be named by Defendant, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendants' discovery responses. In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendants in discovery or through Public Information Act requests for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise or related to this case.

E. Plaintiffs reserve the right to call undesignated rebuttal expert witnesses, whose testimony cannot reasonably be foreseen until the presentation of the evidence against the Plaintiffs.

15

F. Plaintiffs reserve the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

G. Plaintiffs reserve the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Federal Rules of Civil Procedure.

H. Plaintiffs reserve the right to elicit any lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not violate any existing Court Order or the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. Specifically, Plaintiffs reserve the right to elicit such testimony from persons with knowledge of relevant facts who have been identified in response to discovery propounded to Plaintiffs.

I. Plaintiffs reserve all additional rights they have with regard to experts pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the case law construing same, and the rulings of the trial court.

J. Plaintiffs names all of those persons identified as having knowledge of relevant facts whose training and background enables them to testify as experts and who may be called as experts by any of the parties to this litigation. Furthermore, Plaintiffs adopt the designation of experts of Defendants to this litigation, without necessarily adopting their opinions or validating their qualifications as experts.

K. Plaintiffs reserve the right to call former and current employees and/or representatives of Defendants as they are identified in discovery.

L. Attorneys' Fees

Plaintiffs' counsel, Jeff Edwards, Scott Medlock, David James, Wallis Nader, Michael Singley, and any other attorneys retained by Plaintiffs in this matter, will testify concerning the amount, reasonableness, and necessity of Plaintiffs' attorney fees. To the extent their biographies and resumes have not already been produced, they will be produced at an appropriate time after judgment, as that is when attorneys' fees issues are typically resolved. Plaintiffs further reserve the right to supplement with expert testimony by other attorneys in the relevant market(s).

DATED: June 19, 2017.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
    Tel.    512-623-7727
    Fax.    512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
SCOTT MEDLOCK
State Bar No. 24044783
MICHAEL SINGLEY
State Bar No. 00794642
DAVID JAMES
State Bar No. 24092572

Wallis Nader
Texas Bar No. 24092884
Southern District No. 2609150
TEXAS CIVIL RIGHTS PROJECT—
HOUSTON
2006 Wheeler Ave
Houston, TX 77004
    Tel.    (832) 767-3650
    Fax.    (832) 554-9981

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record via the Court's electronic case filing system (without reports), and a copy with reports has been served by electronic mail by all counsel of record and by facsimile on the following counsel:

Harold J. Liller
Assistant Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.   (512) 463 – 2080
Fax.   (512) 936 – 2109

Lee Haney
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.   (512) 463 – 2080
Fax.   (512) 936 – 2109

Graig J. Alvarez
815 Walker Street, Suite 1450
Houston, Texas 77002
Tel.   (713) 351 – 0300
Fax.   (713) 351 – 0320

Marc Rietvelt
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.   (512) 463 – 2080
Fax.   (512) 936 – 2109